# HERZFELD + RUBIN
## PC

125 BROAD STREET
NEW YORK, NY 10004
TEL (212) 471-8500  FAX (212) 344-3333
WWW.HERZFELD-RUBIN.COM

# MEMO ENDORSED

**Maureen Doerner Fogel**
**Direct Dial** (212) 471- 8535
mfogel@herzfeld-rubin.com

October 28, 2021

**VIA ECF**
The Honorable Kenneth M. Karas
United States District Judge
U.S. District Court, Southern District of New York
300 Quarropas Street
White Plains, New York 10601

> Re: *W.S.R., An Infant By And Through His Father William Richardson, and William Richardson And Nicole Richardson, Individually v. FCA US LLC, Yanfeng US Automotive Interior Systems I LLC (a/k/a Yanfeng Automotive Interior Systems)*, Docket No. 7:18-cv-06961-KMK-AEK

Dear Judge Karas:

This letter is submitted on behalf of Defendant FCA US LLC ("FCA US"). We write pursuant to Rule IX.A. of the Court's Individual Practices to request that confidential materials filed as Exhibits to Motions for Summary Judgment filed by Plaintiffs, Adient, and Yanfeng remain under seal. These Motions include: 1) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on FCA's Crossclaims and Adient, JCIM and JCI's Crossclaim Against FCA ("Adient v. FCA US"); 2) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on Plaintiffs' Claims ("Adient v. Plaintiffs"); 3) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on YFAI's Cross Claims and Adient, JCIM, and JCI's Crossclaims against YFAI ("Adient v. YFAI"); 4) Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"); and 5) Yanfeng Motion for Summary Judgment ("Yanfeng Motion")(the Motions are collectively referred to as "Other Party Motions"). The Exhibits attached to the Other Party Motions include:

1. Adient v. FCA US - Exhibit Q; Adient v. Plaintiffs - Exhibit K, Adient v. YFAI - Exhibit M - Purchase Order 20797023

2. Adient v. FCA US-Exhibit B; Yanfeng Motion - Exhibit V - Production and MOPAR Purchasing General Terms and Conditions (7/2015 version)

AFFILIATES

LIVINGSTON, NEW JERSEY            BUCHAREST, ROMANIA            LOS ANGELES, CALIFORNIA

**HERZFELD + RUBIN** PC

Honorable Kenneth M. Karas
October 28, 2021
Page 2

3. Yanfeng Motion - Exhibit T - Production and MOPAR Purchasing General Terms and Conditions (9/2010 version)

4. Yanfeng Motion - Exhibit U - Production and MOPAR Purchasing General Terms and Conditions (12/2014 version)

5. Adient v. Plaintiffs - Exhibit N - Test Report - MPR Cover Abuse Load

6. Adient v. FCA US - Exhibit H; Adient v. Plaintiffs - Exhibit Z; Adient v. YFAI - Exhibit G; Yanfeng Motion - Exhibit HH - DVP&R - Instrument Panel Assembly System

7. Yanfeng Motion - Exhibit MM - FCA US LLC Performance Standard PF-11365

8. Adient v. Plaintiffs - Exhibit R - correspondence re: MPR Door Change

9. Adient v. Plaintiffs - Exhibit S - correspondence re: RU IP DVP&R

10. Adient v. Plaintiffs - Exhibit V - correspondence re: MPR Access Door Study

11. Adient v. Plaintiffs - Exhibit W - correspondence re: Column to Gap Hider Resolution

12. Plaintiffs' Motion - Exhibit AA-2.5 - correspondence re: Interior Value Optimization Report

13. Plaintiffs' Motion v. FCA US - Exhibit AA-2.6 - correspondence re: MPR retention cover change

14. Plaintiffs' Motion v. FCA US - Exhibit AA-2.8 - correspondence re: MPR Cable Cover Performance

15. Plaintiffs' Motion v. FCA US - Exhibit AA-2.9 - correspondence re: MPR cover on Steering column cover

16. Plaintiffs' Motion - Exhibit AA-4.2 - correspondence re: Manual Park Release Door Attachment Review

17. Plaintiffs' Motion - Exhibit AA-4.4 - correspondence re: MPR Door Changes

18. Plaintiffs' Motion - Exhibit AA-2.3 - Agenda - Vehicle Regulations Committee Meeting No. 475

**HERZFELD + RUBIN** PC

Honorable Kenneth M. Karas
October 28, 2021
Page 3

19. Plaintiffs' Motion - Exhibit AA-2.11 - VSRC Product Investigations Presentation; Yanfeng Motion – Ex. X

20. Plaintiffs' Motion - Exhibit AA-3.1 - VSRC Product Investigations Presentation Excerpts; Yanfeng Motion – Ex. X

21. Plaintiffs' Motion - Exhibit AA-3.2 - Notes- J. Mihm- VSRC

22. Plaintiffs' Motion - Exhibit AA-4.1 - Notes- J. Mihm- VSRC

23. Plaintiffs' Motion - Exhibit AA-3.3; Yanfeng Motion - Exhibit II- Internal Investigation Details

24. Plaintiffs' Motion - Exhibit AA-2.4; Yanfeng Motion - Exhibit O - Customer Assistance Inquiry Record 32667163

25. Yanfeng Motion - Exhibit P - Preliminary Vehicle Inspection Report

These documents are collectively referred to as the "Confidential Exhibits."

While there is a presumptive right of public access to judicial documents, that right is "not absolute." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). Instead, the Court must "balance competing considerations against" access, including but not limited to, "the danger of impairing law enforcement or judicial efficiency" and "the privacy interest of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995)); *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 417 (S.D.N.Y. 2012) (Karas, J.); *see also* Fed. R. Civ. P. 26(c)(1)(G) (permitting issuance of a protective order, for good cause, to prevent disclosure of "a trade secret or other confidential research, development, or commercial information").

This balancing test here weighs in favor of sealing the Confidential Exhibit because the Confidential Exhibits reveals highly sensitive, non-public business information that courts have consistently held warrants sealing. See *Lugosch*, 435 F.3d at 120.

Specifically, the Confidential Exhibits generally fall into six categories: (1) Purchase Order (1 document); (2) Contract Terms and Conditions (3 documents); (3) Engineering Test Report (1 document); (4) Engineering Standards and Reports (2 documents); (5) Confidential Communications (10 documents); and (6) Root Cause Analysis (8 documents). These documents contain FCA US's highly sensitive and confidential trade secrets and other confidential and proprietary vehicle development and commercial information as set forth in the Declaration of Dave Valley, attached as Exhibit "1". Mr. Valley attests as to why each category of documents is confidential to FCA US (see Paragraphs 12-17), including that:

# Herzfeld + Rubin
PC

Honorable Kenneth M. Karas
October 28, 2021
Page 4

- The Confidential Exhibits reveals FCA US's internal processes for vehicle development, supply, and sourcing for purposes of distinguishing FCA US products in the marketplace. FCA US considers such matters to be commercially sensitive and proprietary business information. (Valley Decl., ¶18).

- Documents like the Confidential Exhibits are not publicly posted by the company nor shared with competitors, and thus are not available to the public or to FCA US's competitors. In the subject case, the Confidential Exhibits were disclosed by FCA US as part of the company's good faith discovery obligations and only after obtaining a Protective Order from the Court for purposes of ensuring that such materials would be protected from public disclosure in order to protect FCA US's commercial interests and competitive standing. (Id).

- FCA US expended significant time and resources in generating the Confidential Exhibits. Multiple FCA US employees participated in their creation, which spanned several months. Such confidential business information is proprietary to FCA US, provides FCA US with an advantage in the market over anyone who does not have such information, and should thus remain protected from public disclosure. (Valley Decl., ¶19).

- FCA US derives an economic benefit from the information contained in the Confidential Exhibits and the fact that such processes are not generally known by or ascertainable to the public or to FCA US's competitors. (Valley Decl., ¶20).

- Public dissemination of the Confidential Exhibits would expose to FCA US's competitors to (a) FCA US's confidential methods, approaches, and strategies for testing both the specific issue addressed and engineering issues in general, and (b) FCA US's analysis, strategies, and conclusions concerning supply and sourcing issues. FCA US's competitors, in turn, would gain valuable information about FCA US's engineering processes, supply considerations, and conclusions that they otherwise would not know – all to FCA US's economic detriment. (Valley Decl., ¶21).

- FCA US's confidential procedures were developed over time and after significant investment, and thus provide FCA US with an economic advantage in the marketplace that is not available to its competitors. Public disclosure of the Confidential Exhibits would reduce the value of FCA US's investment in these confidential processes. (Valley Decl., ¶22).

- Disclosure of the Confidential Exhibits to FCA US's competitors would allow them to appropriate FCA US's confidential engineering process, analysis, and/or conclusions without incurring any of the costs involved to develop it, placing FCA US at a disadvantage in the highly competitive automobile industry. (Valley Decl., ¶23).

# HERZFELD + RUBIN
PC

Honorable Kenneth M. Karas
October 28, 2021
Page 5

The Confidential Exhibits were accordingly designated by FCA US as "confidential" and subject to the Protective Order in this action. (Amended Stipulated Protective Order Dkt. 43).

This information should remain confidential and sealed from the public record in order to avoid unfairly giving competitors access to FCA US's trade secrets, and insight into the companies' most sensitive and proprietary information. See, e.g., *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (allowing sealing of documents "contain[ing] highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 424-25 (E.D.N.Y. 2007) ("Disclosure of confidential proprietary material and trade secrets poses a significant risk of harm to Lilly, a pharmaceutical company operating in a competitive marketplace."); *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035-36 (S.D.N.Y. 1993) (that defendant's "competitors . . . could use [the information] to do competitive injury to the defendants is, on the facts of this case, a sufficient basis" for sealing); *Playtex Prod., LLC v. Munchkin, Inc.*, No. 14-1308, 2016 WL 1276450, at *11-12 (S.D.N.Y. Mar. 29, 2016) (granting request to redact portions of summary judgment brief which referenced "confidential and sensitive business information, including sales and costs information, presentations, merger discussions, and competitive analyses and product testing" because "Plaintiffs would be competitively harmed"); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("[c]onfidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit.").

Additionally, FCA US previously submitted a letter and declaration in support of Defendant FCA US's Motion to Seal Exhibits to FCA US Motion for Summary Judgment addressing 22 documents attached to FCA US's Motion for Summary Judgment. (Dkt. 238) Several of those same documents were attached as Exhibits to the Other Party Motions. FCA US seeks to seal those duplicate Exhibits for the same reasons set forth in the prior letter and Declaration of Dave Valley dated September 30, 2021. (Dkt. 238 Attachment 1) The justification for FCA US's request to seal such duplicate documents is the same as that provided in the prior letter and declaration of Mr. Valley. A chart cross-referencing the exhibits addressed in FCA's prior motion to seal with those same exhibits as attached to the Other Party Motions is attached as Exhibit "A" to the Declaration of Dave D. Valley ("Valley Decl.") dated October 22, 2021 submitted herewith as Exhibit "1."

Respectfully submitted,

*Maureen Doerner Fogel*

Maureen Doerner Fogel

# HERZFELD + RUBIN PC

Honorable Kenneth M. Karas
October 28, 2021
Page 6

**VIA ECF**

cc  Yitzchak M. Fogel, Esq.
Danielle George, Esq.
Cathleen Ann Giannetta, Esq.
Katherine Garcia, Esq.
John Patrick Mitchell, Esq.
William J. Conroy, Esq.
Thomas Hinchey, Esq.
Meaghann C. Porth, Esq

Granted. The Court also grants Plaintiffs' letter motion to file exhibits under seal (Dkt. No. 225), the Defendant Adient's letter motion to file exhibits under seal (Dkt. No. 228), Defendant/Third-Party Defendant YFAI's letter motion to file exhibits under seal (Dkt. No. 234), and Defendant FCA's letter motion to file exhibits under seal (Dkt. No. 238).

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 225, 228, 234, 238, and 260.

So Ordered.

November 10, 2021
White Plains, NY

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

W.S.R., an Infant by and Through His Father
WILLIAM RICHARDSON, and WILLIAM
RICHARDSON and NICOLE RICHARDSON,
INDIVIDUALLY, INDIVIDUALLY,

Plaintiffs,

v.

No. 7:18-cv-06961-KMK-LMS

FCA US LLC and YANFENG US AUTOMOTIVE
INTERIOR SYSTEMS II LLC (a/k/a YANFENG
AUTOMOTIVE INTERIOR SYSTEMS),

Defendants

### DECLARATION OF DAVE D. VALLEY IN SUPPORT OF FCA US LLC'S MOTION TO SEAL EXHIBITS TO OTHER PARTY MOTIONS FOR SUMMARY JUDGMENT

I, Dave D. Valley, declare as follows:

1. I am over 21 years of age and if called as a witness I could and would testify competently to the matters set forth in this declaration. I make this declaration based on personal experiences and knowledge of the facts set forth herein, which includes my review of the books and records of FCA US LLC ("FCA US") that are kept in the ordinary course of its business, and information provided to me by persons upon whom I regularly rely in the ordinary course of my duties. I make this Declaration in support of Defendant FCA US's Motion to Seal Exhibits to Other Party Motions for Summary Judgment.

2. I have been a Senior Specialist in the Product Analysis group with FCA US since June 2019. In my role as a Senior Specialist, I assist with discovery in U.S. civil litigation in which FCA US is a party, including but not limited to collecting documents, conducting vehicle inspections, and serving as FCA US's corporate representative, where appropriate. I also work

1

with FCA US's safety office on investigations when needed. I further attend meetings with engineering groups within FCA US to provide feedback concerning field issues. Moreover, I attend meetings regarding new technologies or vehicle features that are coming to market.

3. I have a Bachelor of Science degree in mechanical engineering, which I received from the University of Wisconsin in 1988. I have been employed by FCA US since the company began operations in December of 2014. Prior to December 2014, and since 1988, I was employed by Chrysler Group LLC and its predecessors. During that time, I have worked on the design and development of multiple automotive systems, assemblies, and components.

4. As a part of my job responsibilities and duties, and based on my background and experience with FCA US, I am familiar with various types of documents that FCA US generates in its normal course of business, including engineering documents, supplier contracts, and confidential business and financial documents, among others, and why such documents and information are considered by FCA US to be confidential. Moreover, I am familiar with the nature of the information in these confidential FCA US documents, and the steps FCA US takes to maintain their confidentiality or prevent public disclosure of this information.

5. In this Declaration I discuss certain proprietary, trade secret, and confidential information of FCA US related to vehicle design, development, and supply. In executing this Declaration, I do not intend, and FCA US has not authorized me, to waive any protections or privileges FCA US may have as to proprietary, trade secret, and/or confidential information, or as to attorney-client communications or information developed in anticipation of or in response to litigation.

6. I am providing this Declaration in order to establish the proprietary and trade secret nature of certain FCA US information and documents. I am familiar with the nature of the

information contained within these confidential documents, their sources, the manner and way FCA US handles the information, and the steps FCA US takes to prevent public disclosure of this information.

7. I understand that certain confidential documents were provided as Exhibits to Motions for Summary Judgment filed by Plaintiffs, Adient, and Yanfeng. These Motions include: 1) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on FCA's Crossclaims and Adient, JCIM and JCI's Crossclaim Against FCA ("Adient v. FCA US"); 2) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on Plaintiffs' Claims ("Adient v. Plaintiffs"); 3) Defendants Adient PLC, Johnson Controls, and JCIM's Motion for Summary Judgment on YFAI's Cross Claims and Adient, JCIM, and JCI's CrossClaims against YFAI ("Adient v. YFAI"); 4) Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"); and 5) Yanfeng Motion for Summary Judgment ("Yanfeng Motion")(the Motions are collectively referred to as "Other Party Motions").

8. I previously executed a Declaration in support of Defendant FCA US's Motion to Seal Exhibits to FCA US Motion for Summary Judgment addressing 22 documents attached to FCA US's Motion for Summary Judgment. Several of those same documents were attached as Exhibits to the Other Party Motions. FCA US seeks to seal those duplicate exhibits for the same reasons set forth in my prior Declaration. The justification for FCA US's request to seal such duplicate documents is the same as that provided in my prior Declaration. A chart cross-referencing the exhibits addressed in my prior Declaration with those same exhibits as attached to the Other Party Motions is attached as Exhibit A.

3

9. Otherwise, I am advised that the Other Party Motions identify additional documents as exhibits which FCA US contends are confidential and which should not become a part of the public record.

10. I am also advised that these exhibits constitute 25 documents which are attached to the Other Party Motions that were not addressed in my prior Declaration.

11. These documents generally fall into the following six categories:

    a. Purchase Order (1 document);

        i. Adient v. FCA US - Exhibit Q; Adient v. Plaintiffs - Exhibit K, Adient v. YFAI - Exhibit M - Purchase Order 20797023

    b. Contract Terms and Conditions (3 documents);

        i. Adient v. FCA US-Exhibit B; Yanfeng Motion - Exhibit V - Production and MOPAR Purchasing General Terms and Conditions (7/2015 version)
        ii. Yanfeng Motion - Exhibit T - Production and MOPAR Purchasing General Terms and Conditions (9/2010 version)
        iii. Yanfeng Motion - Exhibit U - Production and MOPAR Purchasing General Terms and Conditions (12/2014 version)

    c. Engineering Test Reports (1 document);

        i. Adient v. Plaintiffs - Exhibit N - Test Report - MPR Cover Abuse Load

    d. Engineering Standards and Reports (2 documents);

        i. Adient v. FCA US - Exhibit H; Adient v. Plaintiffs - Exhibit Z; Adient v. YFAI - Exhibit G; Yanfeng Motion - Exhibit HH - DVP&R - Instrument Panel Assembly System
        ii. Yanfeng Motion - Exhibit MM - FCA US LLC Performance Standard PF-11365

    e. Confidential Communications (10 documents)

        i. Adient v. Plaintiffs - Exhibit R - correspondence re: MPR Door Change
        ii. Adient v. Plaintiffs - Exhibit S - correspondence re: RU IP DVP&R
        iii. Adient v. Plaintiffs - Exhibit V - correspondence re: MPR Access Door Study

4

  iv. Adient v. Plaintiffs - Exhibit W - correspondence re: Column to Gap Hider Resolution
  v. Plaintiffs' Motion - Exhibit AA-2.5 - correspondence re: Interior Value Optimization Report
  vi. Plaintiffs' Motion v. FCA US - Exhibit AA-2.6 - correspondence re: MPR retention cover change
  vii. Plaintiffs' Motion v. FCA US - Exhibit AA-2.8 - correspondence re: MPR Cable Cover Performance
  viii. Plaintiffs' Motion v. FCA US - Exhibit AA-2.9 - correspondence re: MPR cover on Steering column cover
  ix. Plaintiffs' Motion - Exhibit AA-4.2 - correspondence re: Manual Park Release Door Attachment Review
  x. Plaintiffs' Motion - Exhibit AA-4.4 - correspondence re: MPR Door Changes

 f. Root Cause Analysis (8 documents)

  i. Plaintiffs' Motion - Exhibit AA-2.3 - Agenda - Vehicle Regulations Committee Meeting No. 475
  ii. Plaintiffs' Motion - Exhibit AA-2.11 - VSRC Product Investigations Presentation; Yanfeng Motion – Ex. X
  iii. Plaintiffs' Motion - Exhibit AA-3.1 - VSRC Product Investigations Presentation Excerpts; Yanfeng Motion – Ex. X
  iv. Plaintiffs' Motion - Exhibit AA-3.2 - Notes- J. Mihm- VSRC
  v. Plaintiffs' Motion - Exhibit AA-4.1 - Notes- J. Mihm- VSRC
  vi. Plaintiffs' Motion - Exhibit AA-3.3; Yanfeng Motion - Exhibit II- Internal Investigation Details
  vii. Plaintiffs' Motion - Exhibit AA-2.4; Yanfeng Motion - Exhibit O - Customer Assistance Inquiry Record 32667163
  viii. Yanfeng Motion - Exhibit P - Preliminary Vehicle Inspection Report

These documents are collectively referred herein to as "Exhibits." I have reviewed these Exhibits and I am familiar with them. These Exhibits contain FCA US's highly sensitive, trade secret and other confidential and proprietary vehicle development and commercial information.

### Purchase Order

12. The financial information contained in the Purchase Order referenced in Paragraph 11(a) above is proprietary and confidential to FCA US. FCA US's pricing with its suppliers is proprietary because it reveals information that is the subject of confidential negotiations between FCA US and its suppliers regarding per piece pricing, overall contract pricing and pricing change

5

costs. This information is central to FCA US's relationship with its suppliers, as well as specific to the component parts at issue. Allowing such information to be made public would harm FCA US's business relationships with its other suppliers, because it would allow them to use such pricing information to their advantage in their own negotiations with FCA US, without expending the same effort that FCA US and its suppliers expended in negotiating the referenced pricing and costs in the contracts identified above. FCA US considers such pricing information to be proprietary and confidential, and maintains the confidentiality of this information within the company.

### Contract Terms and Conditions

13. The contract terms and conditions referenced in Paragraph 11(b) above are also proprietary and confidential to FCA US. For the same reasons identified above with respect to the financial information contained in the Purchase Order, the terms and conditions of the referenced contracts are the subject of negotiation between FCA US and its suppliers. The methods by which FCA US solicits, negotiates, and codifies its supply relationships with its suppliers were developed by FCA US over time based upon years of learning and continual improvement of FCA US's process and procedures for managing supplier issues in the highly competitive automotive market. Documents such as these provide FCA US with a competitive advantage in the marketplace because they reveal FCA US's approaches to component supply relationships with its suppliers. If made public, these documents would benefit an FCA US competitor as they would allow competitors to replicate FCA US's confidential processes without the significant time and investment made by FCA US to develop them, thereby allowing FCA US's suppliers' competitors to improve their bargaining power with FCA US to FCA US's detriment.

### Engineering Test Reports

14. The engineering test report contained in Paragraph 11(c) above concerns testing conducted by Yanfeng, and was marked by them as proprietary and confidential. This information is similarly confidential and proprietary to FCA US because it reveals the methodologies and processes that FCA US and its suppliers use to ensure that products meet stated specifications and are tested to approved standards. This information is highly proprietary to FCA US and its suppliers because it reflects not only the actual steps taken to test a product and to certify its fitness, but also the information that FCA US and/or the suppliers consider to be important to such testing. These processes are the result of a significant investment of time by FCA US and its suppliers in developing repeatable processes and procedures that are used to help build vehicles that are more robust over time. FCA US's testing processes and related reports provide FCA US with a competitive advantage in the marketplace over anyone wishing to develop specific components and to understand how to test or improve a product. If a competitor gained access to this information, it would undermine FCA US's advantage in the marketplace as it would allow competitors to duplicate FCA US engineering testing processes and reporting without incurring the attendant costs themselves, which may allow them to get a product to market sooner or at a lower cost than FCA US, thereby putting FCA US at a competitive disadvantage as compared to such competitor.

### Engineering Standards and Reports

15. The engineering standards and design verification reports contained in Paragraph 11(d) above are proprietary and confidential to FCA US. FCA US's internal standards, the methods by which FCA US and its suppliers test components for compliance with its internal and other standards, and processes in which engineering testing is conducted and approved, has been developed by FCA US over time and is based upon years of investment, learning and continual improvement of FCA US's process and procedures within the rapidly growing and competitive automotive market. Such information is highly proprietary to FCA US because it reflects the engineering standards a component must meet, the steps FCA US takes to test vehicle components,

7

and the process through which that testing occurs. FCA US's compliance processes provide FCA US with a competitive advantage in the marketplace over anyone wishing to develop specific components and to understand how to test or improve a product. If a competitor gained access to these types of documents, it would undermine FCA US's advantage in the marketplace as it would allow competitors to duplicate FCA US engineering processes without the cost or expense of developing such protocols on their own.

### Confidential Communications

16. The communications related to component design and development and alternative designs in Paragraph 11(e) above are proprietary and confidential to FCA US. Communications between and among FCA US and its suppliers concerning the design, develop, revisions, alternatives, and testing of its components for compliance with its internal and other standards reflects years of investment, learning and continual improvement of FCA US's process and procedures regarding automotive design and development. Such information is highly proprietary to FCA US because it reflects the steps FCA US takes to design components, how it resolves product concerns with suppliers, and the process through which the consideration of various potential alternatives occurs. The communications themselves reflect confidential information related to FCA US's product design and development, as well as its related processes, which provide FCA US with a competitive advantage in the marketplace over anyone wishing to gain insight into FCA US's product development processes and to understand how to design, test or improve a product. If a competitor gained access to these types of documents, it would undermine FCA US's advantage in the marketplace as it would allow competitors to duplicate FCA US engineering processes without the cost or expense of developing such components on their own.

### Root Cause Analysis

17. The documents concerning root cause analysis of engineering issues contained in Paragraph 11(f) above are proprietary and confidential to FCA US. The process by which FCA US evaluates and determines root causes of potential engineering issues is based upon years of investment, learning and continual improvement of FCA US's process and procedures for product design and development. Such information is highly proprietary to FCA US because it reflects the methods FCA US employs to investigate and evaluate potential engineering concerns related to its products. FCA US's investigation and product concern resolution processes and its methods of interacting with customers in connection with such processes, provide FCA US with a competitive advantage in the marketplace over its competitors seeking to understand how to better identify, evaluate, and address product concerns. If a competitor gained access to these types of documents, it would undermine FCA US's advantage in the marketplace as it would allow such competitors to duplicate FCA US root caused product concern analysis processes without the cost or expense of developing such processes on their own.

### Confidentiality

18. The key to achieving an advantage in the automotive industry is to make a better vehicle in comparison to competitors. Thus, the strategies for design and improving the company's vehicles are of crucial importance to distinguishing the company's products in the marketplace, and FCA US utilizes the referenced Exhibits to help achieve this goal. The Exhibits reveal FCA US's internal processes for vehicle development, supply, and sourcing for purposes of distinguishing FCA US products in the marketplace. FCA US considers such matters to be commercially sensitive and proprietary business information. Documents like the Exhibits are not publicly posted by the company nor shared with competitors, and thus are not available to the

public or to FCA US's competitors. In the subject case, the Exhibits were disclosed by FCA US as part of the company's good faith discovery obligations and only after obtaining a Protective Order from the Court for purposes of ensuring that such materials would be protected from public disclosure in order to protect FCA US's commercial interests and competitive standing.

19. FCA US expended significant time and resources in generating the Exhibits and the confidential information contained therein. Multiple FCA US employees participated in their creation, which spanned several months and includes knowledge and information gained over years. Such confidential business information is proprietary to FCA US, provides FCA US with an advantage in the market over anyone who does not have such information as set forth above, and should thus remain protected from public disclosure.

20. FCA US derives an economic benefit from the information contained in the Exhibits and the fact that such processes are not generally known by or ascertainable to the public or to FCA US's competitors.

21. Public dissemination of the Exhibits would expose to FCA US's competitors to a) FCA's confidential methods, approaches, and strategies for testing both the specific issue addressed and engineering issues in general, and b) FCA US's analysis, strategies, and conclusions concerning supply and sourcing issues. FCA US's competitors, in turn, would gain valuable information about FCA US's engineering processes, supply considerations, and conclusions that they otherwise would not know, all to FCA US's economic detriment.

22. FCA US's confidential procedures were developed over time and after significant investment, and thus provide FCA US with an economic advantage in the marketplace that is not available to its competitors. Public disclosure of the Exhibits would reduce the value of FCA US's investment in these confidential processes.

23. Disclosure of the Exhibits to FCA US's competitors would allow them to appropriate FCA US's confidential engineering process, analysis, and/or conclusions without incurring any of the costs involved to develop it, placing FCA US at a disadvantage in the highly competitive automobile industry.

I declare under penalty of perjury under the laws of the United States and the State of Michigan that the foregoing is true and correct.

Executed on this 22nd day of October, 2021 at Macomb County, Michigan.

_Dave D. Valley_
Dave D. Valley

11

**EXHIBIT "A"**

| FCA US Exhibits to Defendant FCA US LLC's Motion to Seal Exhibits to FCA US LLC's Motion for Summary Judgment | Duplicate Exhibits Attached to Related Motions | D. Valley Declaration Paragraph |
|---|---|---|
| Graber Exhibit C - PO 10276401.pdf; Guido Exhibit B - Purchase Order 102746401.pdf | Adient v FCA - Ex. F; Adient v YFAI - Ex. O; Yanfeng v FCA - Ex. J | 7(a)(ii) |
| Graber Exhibit D - PO 48200015.pdf; Guido Exhibit A - Purchase Order 48200015.pdf | Adient v FCA - Ex. G; Adient v YFAI - Ex. P; | 7(a)(iii) |
| Graber Exhibit L - PO 10184678.pdf; Guido Exhibit C - Purchase Order 10184678.pdf | Adient v FCA - Ex. P; | 7(a)(v) |
| Graber Exhibit M - PO 10869201.pdf | Adient v FCA - Ex. R; Adient v Plaintiff - Ex. L; Adient v YFAI - Ex. N; | 7(a)(vi) |
| Graber Exhibit I - Letter of Intent.pdf; Tereau Exh. F - Letter of Intent.pdf | Adient v FCA - Ex. D; Adient v Plaintiff - Ex. F; Adient v YFAI - Ex. F; Yanfeng v FCA - Ex. GG | 7(a)(xi) |
| Fogel Exhibit AD - Graber Transcript.pdf | Yanfeng v. FCA – Ex. S | 7(a)(xii) |
| Graber Exhibit F - General T&Cs 1-2017.pdf | Yanfeng v FCA - Ex. W | 7(b)(iv) |
| Graber Exhibit G - Indirect T&Cs 8-2011 to 7-30-2015.pdf | Adient v FCA - Ex. C; | 7(b)(v) |
| Fogel Exh. R - Tereau Exh. 9 FCAUS-RICHARDSON-003216 Compliance Report.PDF; Fogel Exhibit Y - Compliance Report.pdf | Adient v FCA - Ex. Y; Adient v Plaintiff - Ex. P; Adient v YFAI - Ex. W; Plaintiff - Ex. AA-2.2 | 7(c)(i) |
| Kastamo Exhibit F.pdf; Tereau Exh. A - OKTT.pdf | Yanfeng v FCA - Ex. LL | 7(c)(ii) |
| Fogel Exh. O - Asselin Ex. 36_FCAUS-RICHARDSON-002952_FCA001 Functional Service Cycle Test Yanfeng.PDF; Tereau Exh. C - Functional Service Cycle Test FCAUS-RICHARDSON-002952_FCA001 Yanfeng Asselin Ex. 36_.pdf | Adient v FCA - Ex. W; Adient v Plaintiff - Ex. Q; Adient v YFAI - Ex. U; | 7(d)(ii) |